IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>AES SPARROWS POINT LNG, LLC, et al.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiffs,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td></td><td>Civil Action No.: RDB-06-2478</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>JAMES T. SMITH, JR., et al.,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Plaintiffs AES Sparrows Point LNG, LLC and Mid-Atlantic Express, LLC ("Plaintiffs") have brought this action for declaratory and injunctive relief against James T. Smith, Jr., in his official capacity as the County Executive of Baltimore County, William J. Wiseman, III, in his official capacity as the Zoning Commissioner for Baltimore County, and Baltimore County, Maryland ("Defendants" or "the County"). The Plaintiffs seek a declaration that an amendment to section 256.4 of the Baltimore County Zoning Regulations, as set forth in Bill 71-06 ("the Zoning Amendment") and providing for absolute prohibitions and limitations on the siting of liquified natural gas ("LNG") importation facilities, is preempted under the Supremacy Clause of the United States Constitution[1] by the Natural Gas Act, 15 U.S.C. §§ 717, *et seq*. ("NGA" or "the Act"), as amended by the Energy Policy Act of 2005, Pub. L. No. 109-58, § 311, 119 Stat. 594, 685 (2005). The Plaintiffs have filed a Motion for Summary Judgment and the Defendants have filed a Motion to Dismiss. The issues have been fully briefed by the parties and a hearing was held by this Court on January 10, 2007.

_____

[1] U.S. CONST. art. VI.

State and local governments have a clearly defined role in providing input to the Federal Energy Regulatory Commission ("FERC") during the application process for the construction of a liquefied natural gas facility.  That input includes consideration of local environmental requirements and any public opposition.  However, the United States Congress has given FERC the exclusive authority to ultimately determine the siting of a liquefied natural gas facility through the Natural Gas Act, which controls natural gas distribution throughout the United States.  A local government may not exercise veto power over this nationwide process by local zoning legislation.

For the reasons that follow, the Plaintiffs' Motion for Summary Judgment will be GRANTED, and the Defendants' Motion to Dismiss will be DENIED.  This Court declares that the Zoning Amendment to section 256.4 of the Baltimore County Zoning Regulations as set forth in Bill 71-06 is unenforceable because it is preempted under the Supremacy Clause of the United States Constitution by the Natural Gas Act, as amended by the Energy Policy Act of 2005.  Accordingly, a permanent injunction enjoining the Defendants from enforcing the Zoning Amendment against the Plaintiffs shall be entered.

<u>BACKGROUND</u>

The facts of this case are undisputed.  Plaintiff AES Sparrows Point LNG, LLC ("AES") entered into an option agreement on November 3, 2005, to lease a site at 600 Shipyard Road in Baltimore County, Maryland, formerly occupied by Bethlehem Steel Corp.  The site is currently zoned for industrial purposes.  (*See* Pls.' Reply Mem. Supp. Summ. J. Ex. A.)  Pursuant to that option agreement, AES proposes to construct a liquefied natural gas[2] ("LNG") terminal at this

---

[2] Natural gas is cooled to a liquid form to facilitate transportation.

site and to import, store, and regassify LNG.  Pursuant to this option agreement, Mid-Atlantic

Express, LLC proposes to construct and operate an 87-mile 30-inch outside diameter natural gas

pipeline extending from the Sparrows Point site to interconnections with existing natural gas

pipeline systems and terminating in Eagle, Pennsylvania.  (Compl. ¶¶ 12-13.)  On March 24,

2006, Plaintiffs initiated the pre-filing process necessary to file a formal application with the

Federal Energy Regulatory Commission to build an LNG terminal at the Sparrows Point site.

Under the Natural Gas Act, a party seeking to construct an LNG terminal must first

obtain authorization from FERC.  15 U.S.C. § 717b(a).  FERC created an extensive pre-filing

process in which an applicant must submit all pertinent information about the proposed site and

building plans, any state and local agencies with permitting authority, the applicant's plans to

receive input from the public, and additional matters.  18 C.F.R. § 157.21.  Applicants must also

comply with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. §§

4321, *et seq*., by examining the impact the facility would have on the environment.  15 U.S.C. §

717b-1(a).  After the applicant completes the pre-filing process and submits a formal application,

FERC consults with a designated state agency on state and local safety issues, including "(1) the

kind and use of the facility; (2) the existing and projected population and demographic

characteristics of the location; (3) the existing and proposed land use near the location; (4) the

natural and physical aspects of the location; (5) the emergency response capabilities near the

facility location; and (6) the need to encourage remote siting."  *Id*. § 717b-1(b).  It is undisputed

that this entire process can take a considerable period of time at substantial monetary cost.  (*See*

Pls.' Mem. Opp'n Mot. Dismiss 6, 20; Defs.' Mem. Supp. Mot. Dismiss 6.)

Upon hearing of AES's plans, local groups and elected officials expressed concern about the negative effects of the proposed plant on the surrounding community and the environment. In response to public opposition, on June 19, 2006, the Baltimore County Council approved Bill 71-06, amending section 256.4 of the Baltimore County Zoning Regulations.  The bill was effective on August 5, 2006.  (*See* Defs.' Mem. Supp. Mot. Dismiss 2.)  This amendment provides that an LNG terminal can only be constructed with a "special exception" and must be at least 5 miles from residential zones and 500 feet from business zones.  There is no dispute that this Zoning Amendment would specifically prevent the Plaintiffs from constructing an LNG facility at Sparrows Point.

On September 22, 2006, Plaintiffs filed this action seeking declaratory relief (Count I) and requesting injunctive relief (Count II).  Plaintiffs seek a declaratory judgment that the Zoning Amendment violates the Supremacy Clause of the United States Constitution and is preempted by the Natural Gas Act, and the Plaintiffs further seek an injunction barring the enforcement of the Zoning Amendment.  On October 16, 2006, Defendants filed a Motion to Dismiss this case (Paper No. 4) for lack of subject matter jurisdiction and lack of ripeness.  On November 27, 2006, Plaintiffs filed a Motion for Summary Judgment (Paper No. 9).  On January 8, 2007, having completed the pre-filing process, the Plaintiffs submitted their formal application to the Federal Energy Regulatory Commission for approval.  This Court conducted a hearing on both motions on January 10, 2007, pursuant to Local Rule 105.6 (D. Md. 2004).

<u>STANDARDS OF LAW</u>

**I.      Motion to Dismiss**

      **A.      Subject Matter Jurisdiction**

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  "The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court."  *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005).  The court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).  "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

Pursuant to the "well-pleaded complaint" rule, subject matter jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59 (1978).  This well-pleaded complaint rule applies to declaratory judgment actions.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

      **B.      Ripeness**

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the

challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08

(2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *overruled on other*

*grounds by Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Ohio Forestry Assoc., Inc. v.*

*Sierra Club*, 523 U.S. 726, 732 (1998).  The ripeness doctrine is "drawn both from Article III

limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction[.]"

*Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993).

　　　In assessing whether a dispute is ripe for adjudication, a court must evaluate "(1) the

fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court

consideration."  *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (citation omitted).  As the United

States Court of Appeals for the Fourth Circuit has recently explained, "[a] case is fit for judicial

decision when the issues are purely legal and when the action in controversy is final and not

dependent on future uncertainties."  *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (citing

*Charter Fed. Sav. Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992)).  "The

hardship prong is measured by the immediacy of the threat and the burden imposed on the

[plaintiffs] who would be compelled to act under threat of enforcement of the challenged law."

*Charter Fed. Sav. Bank*, 976 F.2d at 208-09.  When considering hardship, it is appropriate to

consider the cost to the parties of delaying judicial review.  *See Fort Sumter Tours, Inc. v.*

*Andrus*, 564 F.2d 1119, 1124 (4th Cir. 1977).

## II.　　Motion for Summary Judgment

　　　Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  *Nat'l City Bank of Indiana v. Turnbaugh*,

463 F.3d 325, 329 (4th Cir. 2006).  In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court

explained that, in considering a motion for summary judgment, "the judge's function is not

himself to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial."  477 U.S. 242, 249 (1986).  This Court has previously

recognized that a case that presents a pure question of law as to federal preemption should be

resolved at the summary judgment stage.  *Nat'l City Bank of Indiana v. Turnbaugh*, 367 F. Supp.

2d 805, 811 (D. Md. 2005), *aff'd*, 463 F.3d 325, 329 (4th Cir. 2006); *see also Retail Indus.*

*Leaders Ass'n v. Fielder*, 435 F. Supp. 2d 481 (D. Md. 2006), *aff'd*, ___ F.3d ___, 2007 WL

102157 (4th Cir. Jan. 17, 2007).

<u>ANALYSIS</u>

**I.      Motion to Dismiss**

**A.      Subject Matter Jurisdiction**

Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal

question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar, Inc.*

*v. Williams*, 482 U.S. 386, 392 (1987).  This rule has significant consequences for certain types

of declaratory judgment actions:

> Under the Declaratory Judgment Act . . . a party which traditionally
> would be a defendant can bring a preemptive suit in federal court,
> thus accelerating the claim against it. This creates a wrinkle in the
> traditional well-pleaded complaint rule.  A would-be *plaintiff*—who
> might well have a federal cause of action—is transformed into a
> declaratory-judgment *defendant*, incapable of invoking a federal
> question on the face of a well-pleaded complaint.  The Supreme
> Court has resolved this by simply directing federal courts to
> hypothesize what a well-pleaded complaint in a traditional case
> would look like.

*Discover Bank v. Vaden*, 396 F.3d 366, 371 (4th Cir. 2005) (emphasis in original; citations omitted).

In this case, Defendants invoke the above variation on the well-pleaded complaint rule to argue that Plaintiffs' preemption claim is insufficient to support federal subject matter jurisdiction.  In making this argument, Defendants rely on the "complete preemption" exception to the well-pleaded complaint rule.  That exception permits a plaintiff to "invoke federal subject matter jurisdiction to obtain a declaratory judgment that a state law requirement or prohibition is preempted, notwithstanding the defensive nature of the preemption contention. . . ."  *Fleet Bank v. Burke*, 160 F.3d 883, 886 (2d Cir. 1998), *cert. denied*, 527 U.S. 1004 (1999).  Defendants maintain that this Court lacks subject matter jurisdiction over the instant matter because there is simply no basis for applying the doctrine of complete preemption in the "hypothetical well-pleaded complaint" presented by this case.  (*See* Defs.' Mem. Supp. Mot. Dismiss 4.)

The problem with Defendants' argument is that it ignores Plaintiffs' request for injunctive relief.  The Complaint in this matter requests both declaratory *and* injunctive relief, and therefore brings this case within the purview of *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983).  In that case, the Supreme Court found that a lawsuit requesting both declaratory and injunctive relief on preemption grounds is sufficient to support subject matter jurisdiction:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.  *See Ex parte Young*, 209 U.S. 123, 160-162 (1908).  A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Id*. at 96 n.14; *see also Verizon Maryland, Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 642

(2002) ("Verizon sought a declaratory judgment that the Commission's order was unlawful, and an *injunction* prohibiting its enforcement.  We have no doubt that federal courts have jurisdiction under § 1331 to entertain such a suit." (emphasis added)); *Lawrence County v. Lead-Deadwood School District No. 40-1*, 469 U.S. 256, 259 n.6 (1985) (characterizing *Shaw* as "reaffirming the general rule" that a plaintiff's request for *injunctive* relief from state regulation on preemption grounds is sufficient to support federal question jurisdiction (emphasis added)); *Fleet Bank*, 160 F.3d at 888 n.4 (acknowledging "[t]he tension between the bar to anticipating federal defenses . . . and the allowance of jurisdiction over claims for injunctive relief, as in *Shaw* . . .").

At the hearing before this Court on January 10, 2007, Defendants responded by arguing that Plaintiffs' position is not supported by recent precedent.  First, Defendants argued that the Supreme Court's decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), severely limited the rule announced in *Shaw* and reinforced by *Verizon Maryland*.  Second, Defendants relied on *Willmar Electric Service, Inc. v. Garcia*, 45 F. Supp. 2d 1099, 1104 (D. Colo. 1999), for the proposition that "[t]he Supreme Court is resoundingly clear that *Shaw* and its progeny which promoted a broad interpretation of ERISA preemption are no longer viable."  These cases simply do not apply to the one at bar.  Neither *Beneficial* nor *Willmar* concerns the well-pleaded complaint rule as that rule operates in the context of a request for declaratory *and* injunctive relief.  Instead, *Beneficial* focuses on the propriety of removal of complaints that purport to assert only state law causes of action, *see* 539 U.S. at 7-8, while *Willmar* addresses the scope of ERISA-based preemption, *see* 45 F. Supp. 2d at 1104.

In sum, the Complaint seeks both declaratory and injunctive relief on grounds of preemption.  This type of action is sufficient to support federal question jurisdiction under *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), and *Verizon Maryland, Inc. v. Public Service Commission*, 535 U.S. 635 (2002).  Accordingly, Defendants' Motion to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is DENIED.

### B.      Ripeness

The rationale behind the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs.*, 387 U.S. at 148-49.  The question of ripeness turns on (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Id.* at 149.

In this case, both of the above factors weigh in favor of finding this matter ripe for adjudication.  First, as the parties acknowledged at the hearing, the preemption questions raised by this case are purely legal in nature.  No discovery or factual developments would aid this Court in determining whether the Zoning Amendment as set forth in Baltimore County Bill No. 71-06 is preempted by the Natural Gas Act.  Second, delaying resolution of this matter would likely subject Plaintiffs to significant hardship.  Plaintiffs would be required to participate in a lengthy and expensive administrative process without knowing whether the successful navigation of that process would result in the ability to construct a liquefied natural gas terminal. In other words, Plaintiffs would be forced to commit significant financial resources to an

administrative process that might be subject to a local veto in the form of the Zoning

Amendment.   Taken together, these considerations strongly suggest that this Court should

resolve the instant dispute now.  *See Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) ("A case

is fit for judicial decision when the issues are purely legal and when the action in controversy is

final and not dependent on future uncertainties.").

Defendants argue that this matter is not ripe for judicial review, because, until approval to

build the proposed liquefied natural gas plant is received, the relation between the local zoning

ordinance and the federal statute at issue remains "what is in reality an abstract question of law."

(Defs.' Mem. Supp. Mot. Dismiss 6.)  However, as Plaintiffs point out, a similar argument was

rejected by the Supreme Court in *Pacific Gas & Electric Co. v. State Energy Resources*

*Conservation and Development Commission*, 461 U.S. 190 (1983).  In that case, utility

companies that planned to seek federal approval for nuclear energy facilities challenged certain

California laws governing the certification of such facilities on preemption grounds.  *Id*. at 198.

One of the challenged laws—section 25524.2 of the California Public Resources

Code—involved a state moratorium on the certification of all new nuclear energy projects.  *Id*. at

197-98.  The Supreme Court found that the plaintiffs' challenge to the state moratorium was

ripe:

> The question of preemption is predominantly legal, and although it
> would be useful to have the benefit of California's interpretation of
> what constitutes a demonstrated technology or means for the disposal
> of high-level nuclear waste, resolution of the preemption issue need
> not await that development.   Moreover, postponement of decision
> would likely work substantial hardship on the utilities.  As the Court
> of Appeals cogently reasoned, for the utilities to proceed in hopes
> that, when the time for certification came, either the required findings
> would be made or the law would be struck down, requires the
> expenditures of millions of dollars over a number of years, without

> any certainty of recovery if certification were denied. . . . Thus, as in the *Rail Reorganization Act Cases*, 419 U.S. 102, 144 (1975), "decisions to be made now or in the short future may be affected" by whether we act. "One does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough." *Id*. at 143 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923)).

*Id*. at 201-02.

This case raises questions that are indistinguishable from those addressed above.  Any efforts for authorization by the FERC would be futile if the County can simply execute a veto by local zoning legislation.  Delaying resolution of the preemption issued in this case, moreover, would frustrate one of the purposes of the recent amendments to the Natural Gas Act, *i.e.*, clarifying the respective roles played by FERC and the states in the administrative process.  *Cf. Pac. Gas & Elec. Co.*, 461 U.S. at 202 (noting that delay "would frustrate one of the key purposes of the Atomic Energy Act").  In sum, the Supreme Court has established that there is no need to withhold court consideration under such circumstances.  *See Pac. Gas & Elec. Co.*, 461 U.S. at 201-02; *Rail Reorganization Act Cases*, 419 U.S. at 144.  Accordingly, Defendants' Motion to Dismiss for lack of ripeness is DENIED.

## II.    Motion for Summary Judgment

Having held that subject matter jurisdiction properly exists in this action which is ripe for judicial review, this Court now addresses the Plaintiffs' Motion for Summary Judgment and their contention that the Zoning Amendment is preempted by the Natural Gas Act.  Initially, in their Response to Plaintiffs' Motion for Summary Judgment, Defendants question whether Plaintiffs have standing to bring the case.  While not having raised that issue in their Motion to Dismiss, the Defendants suggest that it is speculative whether the Plaintiffs will follow through with their

plans.  (*See* Defs.' Mem. Opp'n Summ. J. 3-4.)  It is well established that the criteria for standing are that the plaintiff must allege "an (1) injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision."  *Retail Indus. Leaders Ass'n v. Fielder*, ___ F.3d ___, ___, 2007 WL 102157, at *3 n.1 (4th Cir. Jan. 17, 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  As recently noted by the Fourth Circuit in *Retail Industry Leaders Association*, the Supreme Court in setting forth the criteria for standing in the *Lujan* case noted that the alleged injury for purposes of standing must be "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560.  However, a plaintiff need not "await the consummation of threatened injury to obtain preventative relief.  If the relief is certainly impending, that is enough."  *Retail Indus. Leaders Ass'n*, ___ F.3d at ___, 2007 WL 102157, at *4 (citing *Friends of the Earth, Inc. v. Gaston Cooper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir. 2000)).  The record is clear that AES in fact entered into an option agreement to lease the land in question and initiated the pre-filing process with FERC.  (*See* Pls.' Reply Mem. Supp. Summ. J. Ex. A; Compl. Ex. 1.)  Mid-Atlantic Express, LLC is proposing to construct and operate pipelines extending from AES's facility.  The injury to the Plaintiffs is "certainly impending" in that any efforts for FERC approval is futile if the Baltimore County Council can exercise veto power by the subject Zoning Amendment.  Thus, Plaintiffs have sufficiently established that they have standing.

The Supreme Court has held that "in all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  *Medtronic,*

*Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (citations omitted).  The Supreme Court has further noted

that there are three forms of preemption.  First, "Congress explicitly may define the extent to

which its enactments pre-empt state law.  *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299

(1988) (citing *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 95-96 (1983)).  Second, "[i]n the

absence of explicitly statutory language . . . Congress may indicate an intent to occupy a given

field to the exclusion of state law."  *Id.* at 299-300.  Third, "even where Congress has not

entirely displaced state regulation in a particular field, state law is pre-empted when it actually

conflicts with federal law."  *Id.* at 300.  Plaintiffs contend that the Zoning Amendment is

preempted in all three ways.

### A.    Express Preemption

First, Plaintiffs contend that the NGA expressly preempts the Zoning Amendment.  (Pls.'

Mem. Supp. Summ. J. 9.)  Defendants argue that Congress could not have intended to preempt

local zoning authority, because it is generally reserved to the states as part of their inherent

police powers to protect the public welfare.  *See Village of Euclid, Ohio v. Ambler Realty Co.*,

272 U.S. 365, 387 (1926).  However, Plaintiffs argue, and this Court agrees, that the text,

context, and legislative history of the Natural Gas Act ("NGA") clearly reflect the intent of the

United States Congress to preempt local governments with respect to the siting of liquefied

natural gas ("LNG") facilities.

### 1.    Legislative History

Although it is true, as Defendants note, that "legislative history only comes into play

where there is an ambiguity in the statutory language," *Humboldt Express, Inc. v. Wise Co. (In

re: Apex Express Corp*.), 190 F.3d 624, 641 (4th Cir. 1999), the history of the NGA is

particularly instructive in understanding congressional intent in this case.  In 1938, Congress

exercised its authority under the Commerce Clause[3] to enact the NGA, because "Federal

regulation in matters relating to the transportation of natural gas and the sale thereof in interstate

and foreign commerce is necessary for the public interest."  15 U.S.C. § 717(a).

The issue of the location of LNG facilities became a matter of increasing tension between

federal and state authorities.[4]  The Plaintiffs have noted the 2004 California case in which the

Public Utilities Commission of California argued that it had jurisdiction over the siting and

operation of a proposed LNG facility.  *Sound Energy Solutions*, 106 F.E.R.C. ¶ 61,279 (2004).

In response, FERC "assert[ed] exclusive jurisdiction over the proposed project," pursuant to the

NGA, leaving no room for state regulation.  *Id*.  FERC pointed out that it would consider

numerous safety and environmental factors, as well as input from state agencies and public

comments.  *Id*.

In 2005, Congress amended the NGA to address the growing concerns about state

interference and to spell out the roles of both FERC and the states as part of the Energy Policy

Act of 2005 ("EPAct of 2005"), Pub. L. No. 109-58, § 311, 119 Stat. 594, 685 (2005).

Subsection (e)(1), which confers authority to FERC over LNG terminals, was added to section

717b of the NGA through the EPAct of 2005.  Congress also added subsection (d), which

reserves to the states their delegated authority under the Coastal Zone Management Act, 16

---

[3] U.S. CONST. art. I, § 8.

[4] *See generally* Jacob Dweck, David Wochner, & Michael Brooks, *Liquefied Natural Gas (LNG) Litigation after the Energy Policy Act of 2005: State Powers in LNG Terminal Siting*, 27 ENERGY L.J. 473 (2006) (describing the history of conflict between federal and state authorities over the siting of LNG terminals).

U.S.C. §§ 1451, *et seq*., the Clean Air Act, 42 U.S.C. §§ 4201, *et seq*., and the Federal Water

Pollution Control Act, 33 U.S.C. §§ 1251, *et seq*. (otherwise known as the Clean Water Act).

*See* 15 U.S.C. § 717b(d).  Finally, Congress added a new section to the NGA entitled "State and

local safety considerations."  Pub. L. No. 109-58, § 311, 119 Stat. 594, 685 (2005).  Section

717b-1 requires FERC to consult with state agencies throughout the application process on

matters of local concern, including "the existing and proposed land use near the location" and

"the natural and physical aspects of the location."  15 U.S.C. § 717b-1(b).  A designated state

agency may also "furnish an advisory report on State and local safety considerations to the

Commission. . . ."  *Id*. § 717b-1(c).  One Congressman supporting the amendments commented

that the bill "breaks the bureaucratic logjam that has stymied work on approximately 40 liquefied

natural gas facilities nationwide."  (Pls.' Mem. Supp. Summ. J. 2 (quoting 151 Cong. Rec.

H6949, H6962 (Jul. 28, 2005) (statement of Rep. Murphy)).)

     As aptly noted by the Plaintiffs, FERC General Counsel Cynthia Marlette testified in a

congressional hearing that "[a] single federal agency should have the statutory authority to

determine whether a specific proposal for LNG infrastructure development is in the public

interest."  *The Energy Policy Act of 2005, Before the Subcomm. on Energy and Air Quality of the*

*H. Comm. on Energy and Commerce*, 109th Cong. 31 (Feb. 10, 2005) (statement of Cynthia

Marlette, Gen. Counsel, FERC).  During questioning, Ms. Marlette assured the Subcommittee

that states would still have some authority over the siting of LNG terminals pursuant to the three

environmental statutes listed in section 717b(d):

> REP. BOUCHER: So the states still would have the authority to say
> no to the siting of an LNG facility if it deemed that such a siting was
> contrary to local environmental requirements.

MS. MARLETTE: Right. Or if there were a coastal zone management conflict, they would be able to say no as well.

REP. BOUCHER: So you're not seeking the authority to have a preemptive Federal permit that, once issued, would enable the facility to be sited, notwithstanding State objections?

MS. MARLETTE: Correct.

*Id.* at 54-55 (statements of Rep. Rick Boucher and Cynthia Marlette, Gen. Counsel, FERC).

Thus, it appears that Congress passed the amendments with a clear understanding of both FERC's general jurisdiction over site approval and the states' specific authority under certain environmental statutes. Geographical, environmental, and practical considerations already limit where an LNG terminal can be constructed. By giving "exclusive authority" to FERC to regulate the "siting, construction, expansion, or operation of an LNG terminal," Congress explicitly intended to prevent states from imposing *additional* restrictions on the siting of LNG facilities. Thus, the legislative history of the NGA and its amendments in 2005 clearly indicates Congress's intent to preempt state and local interference with the siting of LNG terminals.[5]

## 2.    Text

Plaintiffs argue and this Court agrees that the text of the NGA clearly provides for express preemption. "If [a] statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily

---

[5] The effect of the EPAct of 2005 on the NGA's preemptive effect has been the subject of discussion in the energy law community. *See, e.g.,* Dweck, Wochner, & Brooks, *supra* note 4, at 473. In that article, the authors conclude that the amendments to the NGA give FERC "express, exclusive jurisdiction over LNG terminal siting. . . ." *Id.* at 480. Accordingly, "FERC's preemptive authority includes displacing those state and local laws enacted under police powers traditionally reserved to states, such as *zoning laws*, building permits, and other regulations regarding public safety." *Id.* at 481 (emphasis added).

contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664 (1993). Section 717b(e)(1) provides that "[t]he Commission shall have the *exclusive authority* to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." 15 U.S.C. § 717b(e)(1) (emphasis added). That sentence constitutes an express preemption clause because the words "exclusive authority" unambiguously leave state and local governments "*no* residual power to take actions that would effectively approve or deny proposals for the siting of LNG terminals." (Pls.' Mem. Supp. Summ. J. 9 (emphasis in original).)

Defendants point out that Congress has utilized clearer words of preemption in other statutes. *See, e.g.,* the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) ("supersedes"); the ICC Termination Act of 1995, 49 U.S.C. § 10501(b)(2) ("preempt"); and the Airline Deregulation Act, 49 U.S.C. § 41713 ("preemption"). Defendants contend that because section 717b(e)(1) of the NGA lacks such words, the Act does not expressly preempt zoning ordinances. (Defs.' Mem. Opp'n Summ. J. 7-8.) However, in light of the context and history of section 717b(e)(1), the words "exclusive authority" sufficiently demonstrate Congress's intent to preempt zoning ordinances that interfere with FERC's authority over the siting of LNG terminals.

### 3.    Context

Finally, Plaintiffs correctly note that section 717b(e)(1) must be read in the context of other provisions of the Act that specifically describe states' roles in the application process. (*See* Pls.' Mem. Supp. Summ. J. 10.) For example, subsection (d) reserves to the states their delegated authority under the Coastal Zone Management Act, the Clean Air Act, and the Clean

Water Act.  *See* 15 U.S.C. § 717b(d).  According to Plaintiffs, the juxtaposition of 717b(e)(1) and 717b(d) indicates Congress's intent for the NGA to preempt all state laws relating to LNG facilities except those enacted pursuant to states' delegated authority under the three enumerated environmental statutes.  (Pls.' Mem. Supp. Summ. J. 11.)  Also, section 717b-1 requires FERC to consult with state agencies throughout the application process on matters of local concern, particularly in the area of safety.  Plaintiffs argue, and this Court agrees, that Congress intentionally "structured the NGA to give [states] . . . a voice, but no decision-making authority" and that the Baltimore County Zoning Amendment "turns the statutory and constitutional hierarchy of federal and state authority on its head, turning state consultation and advice into state mandate and control." (Pls.' Mem. Supp. Summ. J. 11-13.)

**B.      Field Preemption**

Apart from the express preemption noted above, in the alternative, this Court finds that the Zoning Amendment is preempted because Congress intended for the NGA and its regulations to occupy the entire field of LNG regulation.  The Supreme Court has noted that "field preemption":

> may be inferred where the pervasiveness of the federal regulation precludes the supplementation by the States, where the federal interest in the field is sufficiently dominant, or where "the object sought to be obtained by the federal law and the character of obligations imposed by it . . . reveal the same purpose."

*Schneidewind*, 485 U.S. at 300.  The NGA broadly applies to the transportation and sale of natural gas in interstate commerce, as well as the "companies engaged in such transportation or sale." 15 U.S.C. § 717.  The Act regulates many aspects of the LNG industry, although only a few are relevant to this case.  Pursuant to section 717b, natural gas companies must obtain

authorization from FERC before engaging in the business of transporting natural gas, and FERC specifically has "exclusive authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." *Id*. §§ 717b(a), (e)(1).  There is an extensive process such applicants must follow, and the NGA charges FERC with promulgating regulations concerning the pre-filing and formal application processes.  *See id*. § 717b-1.  Rather than excluding states entirely from the application process, the NGA specifically reserves to the states their rights and obligations under three federal environmental statutes and requires FERC to consult with them on matters of local concern.  *Id*. §§ 717b(d) & 717b-1.  With the addition of sections 717b(d)-(e)(1) and 717b-1, the NGA now governs virtually every step of an LNG facility's siting, construction, and operation.

On more than one occasion, the Supreme Court has found that Congress intended for the NGA to occupy the field of natural gas regulation.  *See Schneidewind*, 485 U.S. at 300 ("we conclude that [a state securities law] regulates in a field the NGA has occupied to the exclusion of state law"); *N. Natural Gas Co. v. State Corp. Comm'n*, 372 U.S. 84, 91 (1963) ("The federal regulatory scheme leaves no room either for direct state regulation of the prices of interstate wholesales of natural gas, or for state regulations which would indirectly achieve the same result." (citation omitted)).  Defendants argue that these cases merely establish congressional intent for the NGA to occupy only a precisely defined field: the transportation and sale of natural gas.  (*See* Defs.' Mem. Opp'n Summ. J. 12.)  However, at least one federal court interpreted that field to include "the price at which natural gas may be sold, whether natural gas facilities my [sic] be built or modified, where they may be be [sic] located, the methods by which they are constructed, and the safety standards that must be observed," to the exclusion of zoning laws:

> Because of the strong federal interest in establishing a uniform
> system of regulation designed to implement a national policy of
> ensuring an adequate supply of natural gas at reasonable prices; and,
> *because the federal regulatory scheme comprehensively regulates the*
> *location, construction and modification of natural gas facilities, there*
> *is no room for local zoning or building code regulations on the same*
> *subjects*.   In short, Congress clearly has manifested an intent to
> occupy the field and has preempted local zoning ordinances and
> building codes to the extent that they purport to regulate matters
> addressed by federal law.

*Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 52 (D.R.I. 2000) (emphasis added).

The 2005 addition of a specific reference to FERC's control over LNG terminal "siting" in section 717b(e)(1) is further indication of the intent of Congress to establish a national procedure for the siting of liquefied natural gas facilities.  Thus, apart from express preemption, it is clear to this Court that the Zoning Amendment at issue in this case is preempted under the doctrine of "field preemption."

## C.    Conflict Preemption

Apart from the express preemption and field preemption noted above, Plaintiffs contend that the Zoning Amendment "actually conflicts with" the NGA, because it serves as "an anticipatory veto of FERC's authority to determine whether to allow the siting of an LNG facility at Sparrows Point."  (Pls.' Mem. Supp. Summ. J. 19-20.)  Conflict preemption renders state or local laws invalid when "'compliance with both federal and state regulations is a physical impossibility,' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Hillsborough County v. Automated Med. Labs., Inc*., 471 U.S. 707, 713 (1985) (citations omitted).

It is undisputed that the Zoning Amendment in this case would prevent Plaintiffs from building an LNG terminal at Sparrows Point.  However, Defendants argue that it is entirely possible for Plaintiffs to construct an LNG terminal in compliance with both the Zoning Amendment and the NGA by simply proposing a facility more than 5 miles from residential areas and 500 feet from business zones.  (*See* Defs.' Mem. Opp'n Summ. J. 14.)  Defendants are correct that AES could forego the expenses it has already incurred, choose a remote location in Baltimore County that is in compliance with the Zoning Amendment, and start the application process over again.  The problem with Defendants' position, however, is that by restricting even some locations, the Zoning Amendment frustrates the purpose behind section 717b(e)(1) by impeding upon FERC's jurisdiction.  Under Defendants' reasoning, every county in Maryland could pass its own zoning laws restricting the location of LNG facilities within its boundaries.  Even if each ordinance left room for one or two hypothetical locations, taken together, and especially in light of numerous geographic and practical limitations, they would effectively eliminate all possible locations and render FERC's "exclusive authority" over the "siting" of LNG terminals meaningless.  Accordingly, this Court finds that the Zoning Amendment is in direct conflict with the NGA and is therefore preempted.

**D.**      **Facial Challenges and the *Salerno* Standard**

In the hearing held on January 10, 2007, counsel for the Defendants argued that the Plaintiffs had brought a "facial" challenge to the Zoning Amendment, and therefore must meet a strict standard.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).

However, most courts do not invoke this standard in the context of preemption, because a finding of express or field preemption inherently means that there are no circumstances under which the challenged statute or regulation could be valid.  As the Ninth Circuit Court of Appeals explained,

> [t]he categorical approach to [federal] preemption precludes the prospect of finding some circumstances in which a statute is preempted and others where it survives.  The all-or-nothing stakes of [federal] preemption renders the inquiry under *Salerno* moot, because once preemption is called for, the categorical nature of this conclusion automatically commands that 'no set of circumstances exists under which the [statute] would be valid.'  We hold that our preemption analysis by definition slices through the *Salerno* standard, and any dispute as to whether plaintiffs' challenge to the statute is facial is moot and need not be decided.

*Chamber of Commerce of the United States v. Lockyer*, 422 F.3d 973, 993 (9th Cir. 2005), *rev'd on other grounds*, 463 F.3d 1076 (9th Cir. 2006).

As this Court has already held that the Zoning Amendment is clearly preempted by the Natural Gas Act, 15 U.S.C. §§ 717, *et seq*., as amended by the Energy Policy Act of 2005, Pub. L. No. 109-58, § 311, 119 Stat. 594, 685 (2005), this Court has necessarily found that there are no circumstances under which the Zoning Amendment could be constitutionally valid.  Thus, the *Salerno* standard is satisfied and the Zoning Amendment is facially unconstitutional.

## CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment seeking declaratory and permanent injunctive relief will be GRANTED, and the Defendants' Motion to Dismiss will be DENIED.  This Court holds that the amendment to section 256.4 of the Baltimore County Zoning Regulations enacted pursuant to Baltimore County Bill 71-06 is unenforceable because it is preempted under the Supremacy Clause of the United States

Constitution by the Natural Gas Act, as amended by the Energy Policy Act of 2005.

Accordingly, the Defendants will be enjoined from enforcing the Zoning Amendment.  A

separate Order and Judgment effecting the rulings made in this Opinion follows.

/s/
Richard D. Bennett
United States District Judge

Date:  January 23, 2007